**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
IN THE MATTER OF AN APPLICATION           REDACTED
OF THE UNITED STATES OF AMERICA         MEMORANDUM
FOR AN ORDER AUTHORIZING THE             AND ORDER
USE OF A PEN REGISTER AND A TRAP
AND TRACE DEVICE ON WIRELESS             08 MC 0595 (JO)
TELEPHONE BEARING TELEPHONE
NUMBER [REDACTED], SUBSCRIBED
TO [REDACTED], SERVICED BY
[REDACTED].
-----------------------------------------------------------X

**JAMES ORENSTEIN, Magistrate Judge:**

       The government seeks authorization to install and use a pen register device. This routine application is the first that has been presented to me since the decision by a district judge of this court in *In the Matter of an Application of the United States of America for an Order Authorizing the Use of Two Pen Register and Trap and Trace Devices*, 2008 WL 5082506 (E.D.N.Y. Nov. 26, 2008) ("*In re United States*"). Because such applications are time sensitive, I write as briefly as possible to explain the manner in which I resolve it. In short, I grant the government's application, but only if the relevant provider of telecommunications service would record the requested information, including pre-cut-through dialed digits, for its own business purposes without the requested order and only if, in addition, the provider can and will delete and post-cut-through dialed digits ("PCTDD") before providing such information to any government agent. If these conditions are not met, and if instead the government seeks to have the provider transmit some post-cut-through dialed digits to the government in the expectation that a government agency will delete such information without ever decoding it before passing the filtered information to the specific agents conducting the instant investigation, I deny the application.

A.  Precedent

Where, as here, an Article III judge of this court has ruled unambiguously on a matter of law on indistinguishable facts, I am hesitant to do anything other than follow that ruling. In the absence of any controlling decision by the United States Supreme Court or the United States Court of Appeals for the Second Circuit, I of course look for guidance to a decision by a district judge of this court. However, a single district judge's ruling does not establish binding precedent within a district. *See*, *e.g.*, *ATSI Communs., Inc. v. Shaar Fund, Ltd.*, 547 F.3d 109, 112 & n.4 (2d Cir. 2008) (citing cases). As a result, I am obliged to give the matter presented to me for decision my best independent reading of applicable law, regardless of whether that reading accords with that of my superior.[1]

The decision on the instant application falls to me because the application was submitted earlier today while I was the magistrate judge on criminal duty. As an adjunct to an Article III court, a magistrate judge may exercise delegated powers of the court as such, subject to review by a district judge pursuant to Federal Rule of Criminal Procedure 59. The review of a magistrate judge's ruling on a pen register application will normally be assigned to the district judge of this court on "miscellaneous" duty pursuant to Local Rule 50.5. If the author of *In re United States* were the district judge currently assigned to such miscellaneous duty, I would

---

[1] In a recent decision, a district judge wrote that a magistrate judge "was not required to consider" a decision written by a district judge in another district "as 'district court decisions are not treated as binding precedents in other cases.'" *In re Bulk Oil (USA) Inc.*, 2007 WL 1121739, at *10 n.9 (S.D.N.Y. Apr. 11, 2007) (quoting *IBM Credit Corp. v. United Home for Aged Hebrews*, 848 F. Supp. 495, 497 (S.D.N.Y. 1994)). That observation is dicta, and in any event plainly does not address the precise procedural issue here. However, I have not found any more apposite case law on the question of whether a magistrate judge is bound to adhere to the view of a single district judge within the same district with which a different district judge would be free to disagree.

simply defer to his interpretation as a matter of judicial economy rather than force the government to seek review that would inevitably lead to the same result.[2] But where, as here, an appeal of my decision would be directed to a district judge who has not yet considered the issue and would not be bound by the analysis or result in *In re United States*, I conclude that my obligation is to conduct my own analysis. Otherwise, as a practical matter – because a pen register application is ordinarily directed to magistrate judges as a matter of course, and no party has both the incentive to appeal the grant of such an application and the ability or standing to do so – a single district judge's decision in favor of the government on the instant legal question would freeze the development of the law in a district, and possibly in a circuit, in a way that would not be possible with respect to motions normally made in the first instance to a district judge.

B.     Analysis

Since 2001, Congress has defined a "pen register" in pertinent part, as "a device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, provided, however, that such information shall not include the contents of any communication[.]" 18 U.S.C. § 3127(3). As thoroughly discussed by some of my colleagues, that formulation has led to a vexing problem of statutory interpretation. The process normally

---

[2] Even more obviously binding upon me is the directive in *In re United States* that I "issue, if still necessary, an Order authorizing the installation of the pen registers on the SUBJECT TELEPHONES that is consistent with the representations" that the government made in that case and that are largely similar to the government's proposal here. 2008 WL 5082506, at *8. Although the government has not yet advised me that any such order is necessary (and I assume it would have done so in the intervening weeks if the matter were still a live one), I am unquestionably bound to issue the relevant order in that case upon request.

used to install a pen register ordinarily allows the installing party to record and decode not simply the numbers a telephone user has dialed in order to be connected to another party, but also a great deal of other information that can be transmitted in the form of dialed digits but that nevertheless constitutes the "contents" of a communication; for example, a person calling an automated banking service must dial the telephone number of the service, and then enter additional digits that identify the caller's account number and the code needed to authorize access to the caller's account. The telephone number may properly be intercepted by a pen register; the additional numbers, known as "post-cut-through dialed digits" or "PCTDD," are "content" within the meaning of 18 U.S.C. § 2510(8), and accordingly may not recorded or decoded. *See In the Matter of Applications of the United States of America for Orders (1) Authorizing the Use of Pen Registers and Trap and Trace Devices and (2) Authorizing Release of Subscriber Information*, 515 F. Supp. 2d 325 (E.D.N.Y. 2007) ("*EDNY PCTDD*") (magistrate judge decision);[3] *In the Matter of the Application of the United States of America for an Order: (1) Authorizing the Installation and Use of a Pen Register and Trap and Trace Device, and (2) Authorizing Release of Subscriber and Other Information*, 2007 WL 3036849 (S.D. Tex. Oct. 17, 2007) ("*SDTX PCTDD*") (district judge decision).

In the instant application, following an approach approved in *In re United States*, the government proposes to avoid the difficulty described above by insulating the agents and prosecutors conducting the instant investigation in one of two ways:

---

[3] It is my understanding that the cited decision by a magistrate judge was appealed to the district judge on miscellaneous duty and upheld over the government's objection. I was unable to find a citation for that decision in the time available to consider the instant application.

> [I]f possible, the [relevant service] provider will forward only pre-cut-through-dialed digits to the investigative agency. If the provider's technical capabilities require it to forward all dialed digits, including PCTDD, however, the investigative agency will only decode and forward to the special agents the numbers that are dialed before the call is cut through. Thus no PCTDD will be decoded or accessed by anyone.

Sealed Application at 3 n.1 (citing *In re United States*, 2008 WL 5082506, at *1 n.3 ("It is irrelevant that the provider will forward PCTDD to the Government and that the Government will therefore be able, if it violates the court order, to record and decode it.... Congress, in Title III [18 U.S.C. § 2510 *et seq*.], has clearly expressed its belief that the Government can without supervision limit its investigatory activities so as to protect the constitutional rights of suspects.")).

I find that proposal insufficient for the following reason. The pen register statute does not merely forbid the government as such from decoding content such as PCTDD; if it did, I would agree that the government's proposal is workable. Rather, the statute also makes it unlawful for a pen register itself to record the contents of a communication.[4] The government explicitly seeks authorization to have its agents install and use, or cause to be installed and used, a device or process that will *record* all dialing, routing, addressing, and signaling information but that will only exclude the *decoding* of any PCTDD within such information. *See* Sealed Application at 3. Thus, as a result of the orders the government would have me issue, agents of the government (or

---

[4] More precisely, Title III generally makes it illegal for a person, including a service provider, to intercept and disclose the contents of an wire communication. 18 U.S.C. § 2511(1). That prohibition, however, does not apply to the use of a "pen register" as that term is defined in the pen register statute. *Id*. § 2511(2)(h). Accordingly, because a device or process that records content such as PCTDD cannot be considered a "pen register," the use of such a device or process is unlawful. There are other exceptions to the general prohibition in Title III, including an important one discussed below and several other that are inapposite to the instant application.

employees of a service provider, acting at their behest) would install and use a device or process to record the contents of communications.[5] In doing so, they would be using a device or process that cannot be considered a "pen register," and would thereby violate the law. That the same agents, or others acting on their behalf, would somehow later delete the portion of the recording that constituted the contents of the communication would not serve to undo the already completed unlawful act, nor would it retroactively transform something that was not a pen register into something that was.[6]

I recognize the possibility that the service provider may have a legitimate reason to record all of the dialing, routing, addressing, and signaling information at issue here for its own purposes, and that in some such circumstances that recording would not run afoul of the general prohibition against intercepting the contents of communications. *See* 18 U.S.C. § 2511(2)(a)(i). If the provider at issue here does in fact do that, and can then strip away PCTDD before employing the process or device that the government characterizes as a pen register and therefore without providing any PCTDD to any instrumentality of the government, then the pen register the government proposes would meet the statutory definition and I would approve it.

---

[5] Indeed, without such recording of contents, there would be nothing for the service provider or the investigative agency to delete later.

[6] I do not read *In re United States* to take the position that PCTDD would not in fact be recorded at some point before deletion. To the contrary, in a later part of the same opinion, the court explicitly writes that so-called "cell-site information" (a different subset of dialing, routing, addressing, and signaling information the collection of which the government does not explicitly request in the instant application) "becomes a 'historical record'" – and therefore amenable to disclosure under the hybrid authority of the pen register statute and 18 U.S.C. § 2703(d) – "as soon as it is *recorded* by the provider." 2008 WL 5082506, at *4 n.8 (emphasis added).

But if that is not the case, I must deny the application.[7] That is so even if it is the service provider that deletes all PCTDD before providing it to any government agency. If the service provider's recording of content would be accomplished only by virtue of a court-ordered installation and use of some device or process, then that device or process could not properly be considered a pen register within the meaning of 18 U.S.C. § 3127. As a result, even if the deletion of the recorded PCTDD were to be accomplished entirely by the service provider before any information was forwarded to the government investigating agency, the violation would already have occurred.[8]

---

[7] I find unpersuasive the government's reliance on the reference in *In re United States* to the fact that "Congress, in Title III, has clearly expressed its belief that the Government can without supervision limit its investigatory activities so as to protect the constitutional rights of suspects." The government omits the next part of the decision, which explicitly states the portion of Title III to which the court was referring: 18 U.S.C. § 2518(5) (every order "shall contain a provision that the authorization to intercept shall be ... conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter."). *See* 2008 WL 5082506, at *1 n.3. The cited provision of Title III recognizes that an agent who has been authorized to eavesdrop on certain portions of an otherwise private communication cannot, as a practical matter, restrict the interception precisely to the authorized topics; as a result, the statute commands no more than that the agent seek to minimize the interception of contents that are not the subject of the authorizing order. Congress could seek to enact a similar practical solution to the problem of intercepting contents via a device or process that would otherwise be defined as a pen register, and in fact did something quite like that in 1994. *See* 18 U.S.C. § 3121(c) (requiring a government agency using a pen register to use "technology reasonably available to it ... so as not to include the contents of any wire or electronic communication"). That provision was enacted prior to the 2001 amendment to the definition of the term "pen register" that categorically excluded any device or process that records the content of a communication. Although the government has in the past argued that the failure to repeal the 1994 provision means that the 2001 amendment cannot be interpreted to preclude the use of a pen register to record or decode PCTDD, that argument has been rejected, and the government has not sought to resuscitate it here. *See EDNY PCTDD*, 515 F. Supp. 2d at 334-35; *SDTX PCTDD*, 2007 WL 3036849, at *7-*9.

[8] Because I conclude that the provider's action in deleting PCTDD it recorded as a result of a court order would not cure the statutory violation, I need not consider whether, if my analysis thus far is incorrect, it would still be impermissible for the provider to transmit some PCTDD to

7

Conclusion

I emphasize that my basis for denying the requested relief in part is a narrow matter of statutory interpretation. I see no constitutional difficulty with allowing the government to obtain the information it seeks to use for investigative purposes by means of a device or process that would qualify as a pen register but for the fact that, during the collection process, PCTDD information is initially recorded and then quickly deleted. Nor do I mean to convey a belief that Congress would or should, if presented with the issue, do anything other than endorse the methodology the government proposes. However, Congress has taken great care to establish a finely calibrated statutory regime to regulate various forms of electronic surveillance; to the extent that I cannot reconcile an otherwise seemingly appropriate surveillance technique with the relevant statutory provisions, I conclude that I must leave it to Congress to change the law rather than accept the government's implicit invitation to do so.

For the reasons set forth above, I grant the government's application only to the extent that the relevant service provider would in any event record the relevant post-cut-through dialed

---

the investigating agency and have the latter do further deletions before providing only non-content to the specific agents conducting the investigation. To the extent that this ruling may be appealed however, I provide the following alternative basis for denying so much of the government's request as would rely on such a procedure. No provision of the relevant statutory scheme draws any meaningful distinction between one agent and another within the same investigating agency, or indeed between one member of the executive branch of government and another. Even if the government does not wish to characterize its executive branch as unitary for purposes of this issue, it does not cite any authority that would countenance the kind of line-drawing it contemplates. If it is unlawful under 18 U.S.C. § 2511(1) for a service provider to disclose PCTDD to the particular agent conducting the investigation, notwithstanding any exception in 18 U.S.C. § 2511(2), then there appears to be nothing in either Title III or the pen register statute that would allow the provider to disclose the same PCTDD to any other government agent. If there is some other statutory basis for distinguishing among the government's agents in this context, the government has not brought it to my attention.

digits for its own purposes and only to the extent that the provider is able to delete such information before disclosing any other dialing, routing, addressing, or signaling information to the government. To the extent that the provider would not in any event record post-cut-through dialed digits without the requested orders, or is unable to delete all such information from the dialing, routing, addressing, and signaling information it would disclose to the government, I deny the government's application. I therefore direct the government, if it continues to seek a pen register in this case and if such relief is available consistent with the foregoing analysis, to submit to me a proposed order in conformity with this decision.[9]

**SO ORDERED.**

Dated: Brooklyn, New York
December 15, 2008

/s/ James Orenstein
JAMES ORENSTEIN
U.S. Magistrate Judge

---

[9] In light of the importance of this issue and the likelihood that other magistrate judges will confront it, I will prepare a redacted version of decision that can be filed on the public docket without compromising any continuing criminal investigation.